UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JACK MATLOCK, individually and on behalf of all others similarly situated,

Plaintiff,

v.

UNITED HEALTHCARE SERVICES, INC.,

Defendant.

No. 2:13-cv-02206-MCE-EFB

**ORDER**

On October 22, 2013, Plaintiff Jack Matlock ("Plaintiff") filed the present putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq. Plaintiff alleges that Defendant United Healthcare Services ("Defendant") violated the TCPA when it initiated calls to his cell phone without his consent. While Defendant apparently had the consent of the prior subscriber to Plaintiff's phone number, that subscriber had, unbeknownst to Defendant, subsequently switched carriers and his phone number was reassigned to Plaintiff. Defendant thereafter placed calls to the original number to remind the subscriber to get his flu shot. Plaintiff now claims that, by reaching him instead, Defendant violated 47 U.S.C. § 227(b)(1)(A), which makes it unlawful for any person "to make any call (other than a call made for emergency

1

purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to, among other things, cellular telephones. The dispute in this case thus turns, in large part, on whether the "prior express consent of the called party" refers to the party the caller intended to reach or the actual recipient of the call.

A number of courts have issued conflicting decisions (none of which are binding in this Court) as to the meaning of the phrase "called party." Compare, e.g., Cellco P'ship v. Wilcrest Health Care Mgmt., Inc., 2012 WL 1638056 at *7 (D.N.J. May, 8, 2012) ("called party" is the intended recipient of the call), with Soppett v. Enhanced Recovery Co., LLC, 679 F.3d 637 (7th Cir. 2012) ("called party" is the current cell phone subscriber). Accordingly, Defendant filed a petition for an expedited declaratory ruling with the Federal Communications Commission ("FCC") seeking an opinion as to the meaning of that phrase as well as what constitutes "prior express consent" in this particular context. Defendant also asked the FCC to confirm that there is a good faith exception to liability under the TCPA for situations such as this one, when a call is purportedly placed for informational, as opposed to telemarketing, purposes.

Given the pendency of the agency proceedings, Defendant initially sought to stay the instant litigation under the primary jurisdiction doctrine until the FCC proceedings are resolved. The primary jurisdiction doctrine permits courts to stay litigation "pending the resolution of an issue within the special competence of an administrative agency." Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008). "[T]the doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." Id. "[N]o fixed formula exists for applying the doctrine of primary jurisdiction." Id. at 1115 (internal citations and quotations omitted). However, the doctrine applies in cases where there is "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having

regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." Davel Commc'ns, Inc. v. Qwest Corp., 460 F.3d 1075, 1086-87 (9th Cir. 2006) (internal quotations and citations omitted).

As the Court previously noted, the parties do not dispute that most of these factors are present here. Indeed, Plaintiff failed to address, and thus appeared to concede, that the FCC has regulatory authority pursuant to a statute subjecting the industry to a comprehensive regulatory scheme that requires expertise or uniformity in administration. Consequently, because a decision from the FCC was expected shortly, because judicial economy weighs against issuing a decision that may be undermined by an anticipated ruling of the regulatory body, because the violation alleged in this case is not ongoing, and because this case was in the early stages of litigation, the Court stayed these proceedings by Memorandum and Order filed March 20, 2014, pending a decision from the FCC on Plaintiff's petition.

On July 10, 2015, the FCC released an omnibus Declaratory Ruling and Order ("Order") that addressed the TCPA-related petitions pending before it, including the petition filed by Defendant. In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 F.C.C.R. 7964 (2015). The Order addressed a number of issues, including the meaning of the term "called party" under the statute as it relates to telephone numbers that originally belonged to individuals who gave consent to receive calls and were later reassigned to other subscribers. In that instance, the FCC concluded that "the TCPA requires the consent not of the intended recipient of a call, but of the current subscriber (or non-subscriber customary user of the phone). Id. at 7999. The FCC nonetheless created a "one-call" safe harbor in which a caller without knowledge of reassignment could make a single call without risking liability. Id. at 8000.

The FCC's ruling was appealed the same day its Order was released, and this Court's stay was continued pending that ruling. Ultimately, on March 16, 2018, the D.C. Circuit "set aside" the FCC's entire treatment of reassigned numbers, including its

interpretation of both "called party" and its one-call safe harbor. ACA Int'l v. Fed. Communications Comm., 885 F.3d 687, 691 (D.C. Cir. 2018). While the Court did not question the FCC's refusal to impose strict liability for calls placed to reassigned numbers, it nonetheless concluded that the safe harbor - - which granted only a single call free of liability - - did not make sense in light of the FCC's incorporation of reasonable reliance considerations. Id. at 706-07. It accordingly held the adoption of the one-call safe harbor to be arbitrary and capricious, and set aside the FCC's "treatment of reassigned numbers as a whole," including its interpretation of "called party." Id. at 706, 708-09.

In the wake of D.C. Circuit's directive in ACA, the FCC quickly moved to reconsider its definitions of both "called party" and "prior express consent." As Defendant advised the Court it is July 27, 2018, brief in support of a continued stay, two ongoing proceedings initiated by the FCC in March and May of 2018 seek to revisit these questions. See Def's Brief, ECF No. 54, pp. 6-7.

Given the fact that this case revolves around the legality of calls placed to a number where the original holder gave consent but the subsequent transferee did not, the forthcoming new guidelines from the FCC may well be determinative for the outcome of this litigation. As indicated above, the TCPA currently provides an absolute defense to liability if it can be shown that the call at issue "was made with the prior express consent of the called party." 47 U.S.C. § 227(b)((1)(A). As the FCC's May 14, 2018, Public Notice indicated, it seems to address not only the interpretation and implementation of the TCPA following the ACA decision, but also "how to treat calls to reassigned wireless numbers under the TCPA," and more specifically "how to interpret the term 'called party' for calls to reassigned numbers." See Def.'s Brief in Support of a Continued Stay, ECF No. 54: 6:20-28.

Not only are these issues directly germane to this litigation, they are also being considered by the agency with the primary jurisdiction for interpreting the FCC. "Congress vested the FCC with considerable authority to implement the [TCPA]"

including the power to "prescribe regulations to implement the legislation" and "interpretive authority over the . . . Act . . . and its accompanying regulations." Charvat v. EchoStar Satellite, LLC., 630 F.3d 459, 466-67 (6th Cir. 2010); see also Clark, 523 F.3d at 1115 (primary jurisdiction doctrine applies to "agencies possessing 'quasi-legislative powers' and are 'actively involved in the administration of regulatory statues' . . . the FCC is such an agency.").

Recognizing the FCC primary jurisdiction over implementation of the TCPA, several courts have imposed stays pending the FCC's interpretation of TCPA provisions. See, e.g., Charvat, 630 F.3d at 465 (where resolution of a case "turns[s] on the meaning of several provisions" of the TCPA, staying the case pursuant to primary jurisdiction is appropriate); Fried v. Sensia Salon, Inc., 2013 WL 6195483 at *4, *5 (S.C. Tex. Nov. 27, 2013 (noting that "the FCC has significant experience analyzing and interpreting [the TCPA]" and "conclud[ing] that the FCC is in the best position to opine, in the first instance, on . . . whether the [conduct alleged by plaintiff] violates the TCPA."). This is especially true, where, as here, courts to date have reached conflicting conclusions over issues where the FCC has primary jurisdiction.

Given the high number of both reassigned numbers and TCPA lawsuits, it is equally important that these matters be treated uniformly, and the FCC is the best party to do that in the first instance. Moreover, because waiting for the FCC's ruling may dispense with all or part of the issues confronted with this case, a continued stay would appear to promote economy and efficiency for both the parties and this Court. While the Court is mindful that more than five years has passed since the instant matter was initiated, as the foregoing summary of what has transpired in the meantime makes clear, the process has been a continuing one with further clarity expected soon. Consequently, for all the above reasons, the Court believes that a continued stay pending the FCC's issuance of new guidelines remains appropriate.

////

////

| | |
|---|---|
| 1 | The parties are directed to notify the Court within thirty (30) days following a further |
| 2 | decision from the FCC, and shall in any event issue a joint status report as to the status |
| 3 | of these proceedings not later than six (6) months after the date this Order is |
| 4 | electronically filed. |
| 5 |     IT IS SO ORDERED. |
| 6 | Dated: April 15, 2019 |

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE